**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CURLEY JAMES BOYKIN, ID # 1774868,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:13-CV-4643-D-BH** |
| | ) | |
| **CARRIE HUCKLE BRIDGE, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for screening. Based on the relevant filings and applicable law, the complaint should be **DISMISSED** as frivolous.

## I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 against Carrie Huckle Bridge (Bridge) and Lannette Linithicum (Linithicum), a manager and director with the health care division of the Texas Department of Criminal Justice (TDCJ), respectively; Michell Phillip (Phillip) and Rolanda Winfield (Winfield), the senior warden and an assistant warden at the Dawson State Jail, respectively; and Grady Wallace (Wallace), deputy director of private facility contract monitoring with the TDCJ, in their official and individual capacities.  (doc. 3 (Compl.) at 6; Magistrate Judge's Questionnaire (MJQ) Ans. 1-5).  He claims that: (1) his due process rights were violated when he was charged for a medical care visit and Bridge declined to refund this money to him after he filed a grievance (Compl. at 6, MJQ Ans. 1); (2) Linithicum denied him necessary medical care for sleep apnea (doc. 3 at 6, MJQ Ans. 2); (3) Phillip, Winfield, and Wallace violated his Eighth Amendment rights because he was denied recreation time for 310 days while housed in segregation (Compl. at 6); and (4) Phillip and Winfield retaliated against him for filing grievances over the denial of recreation time by reassigning him to general population and then disciplining him for refusing to move there. (Compl. at 3-4; MJQ Ans 3, 4).  Plaintiff seeks monetary damages as well as an order

that he be housed in a particular prison unit in single cell housing status, with continued medical therapeutic study of his respiratory problems.  (MJQ Ans. 9).

## II.  PRELIMINARY SCREENING

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III.  SECTION 1983

Plaintiff seeks monetary and declaratory damages under 42 U.S.C. § 1983.  That section "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Livadas v. Bradshaw*,

512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

## A.  <u>Official Capacity Claims</u>

Plaintiff sues all defendants in their official capacities. (MJQ Ans. 1-5).

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The TDCJ, as a state instrumentality, is cloaked with Eleventh Amendment immunity.  *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995); *Jackson v. Welch*, 3:13-CV-100-L, 2013 WL 2479708, *2 (N.D. Tex. June 10, 2013).  The Eleventh Amendment states that  "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Communic'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983.  *See Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71 (1989).  Plaintiff has therefore not alleged a plausible § 1983 claim against the defendants, as officials and wardens with the TDCJ, in their official capacities.  *See Jackson*, 2013 WL 2479708, at *2 (holding that a suit against the Dawson State Jail warden and the TDCJ executive director are barred by sovereign immunity).

## B.  Cell Assignment

Plaintiff seeks to be housed in a particular prison unit in single cell housing status due to his medical issues.  (MJQ Ans. 9).

An inmate does not have a constitutionally-protected property  or liberty interest in either his unit placement or his custodial classification.  *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995); *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir.1988).  This is true even where a prisoner alleges that the classification is in error.  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (a prisoner does not have a basis for a civil rights complaint simply because he disagrees with a classification decision); *see also Jennings v. BOP*, 354 Fed. App'x 60, 61 (5th Cir. Nov. 12, 2009) (affirming the district court's decision holding that a claim that a prison classification was based on erroneous determinations of a history of violence was frivolous).  Therefore, any claim based on his unit placement and classification fails to state a claim upon which relief may be granted.

## C.  Medical Care Payment

Plaintiff asserts that Bridge deprived him of his property without due process when she declined to reimburse him for a $100 co-payment for medical services after he filed a grievance. He was not reimbursed the money because he had not filed his grievance within ninety days.  (MJQ Ans. 1; Compl. App. C) .

Any claim that Bridge's denial of his grievance was itself a violation of his due process rights is frivolous because Plaintiff has no constitutionally protected interest in a favorable resolution to a grievance. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

To the extent that Plaintiff is asserting that the $100 withdrawal from his account violated his due process rights, Texas state law provides that an inmate who initiates a visit to a health care provider shall pay a $100 fee out of his trust fund account, and that this fee will cover all health care visits for the next year. *See* TEX. GOV'T CODE § 501.063(a) (West 2013). Prior to a 2011 amendment, the fee was $3, and chronic care, emergency care, prenatal care, and routine follow-up care visits were exempted from this fee. As of September of 2011, there are no such exemptions. The statute also states that no inmate may be denied care for failure or inability to pay the fee, however. *Id*.; *see Morris v. Livingston*, 739 F.3d 740, 742 (5th Cir. 2014). In *Morris*, the Fifth Circuit assumed, without deciding, that inmates have a protected property interest in their inmate accounts, which entitles them to adequate notice before funds are removed. *Id*. at 750. Here, Plaintiff does not contend that he received insufficient notice of the fee being removed from his account, however. He only complains that the $100 for a chronic care visit that occurred on May 2, 2012, should have been refunded once it was determined that the visit was for chronic care. (MJQ Ans. 1). This charge for a chronic care visit was not a violation of state law, much less his constitutional rights.[1] Therefore, he has demonstrated no violation of his due process rights when the $100 was deducted from his account.

To the extent Plaintiff claims that his prison unit or the TDCJ violated its own separate

---

[1] Although not raised by Plaintiff, the Fifth Circuit also held in *Morris* that the $100 health services fee does not violate either a prisoner's Eighth Amendment right to be free from cruel or unusual punishment or his Fourth Amendment right to be free from unreasonable seizures. *Morris*, 739 F.3d at 746-49, 751-52.

regulation regarding what health care visits would require a fee and when an inmate may protest that fee, an alleged failure to follow prison rules and regulations does not give rise to a constitutional violation.   *Taylor v. Howards*, 268 F.3d 1063, *1 (5th Cir. July 17, 2001), *citing Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  His medical care payment claim should be dismissed as frivolous.

## D.  <u>Medical Care</u>

Plaintiff next asserts that Linithicum violated his constitutional rights by denying him adequate medical care for his sleep apnea.

Plaintiff was diagnosed with sleep apnea on June 2, 2012, while in prison.  The doctor who diagnosed him recommended that he participate in a sleep study.   On June 28, 2012, he was prescribed allergy medication to help alleviate his sleep apnea. (MJQ Ans. 8; Compl. App. A). Plaintiff was referred to the pulmonary clinic for evaluation on September 4, 2012, but he missed that appointment.   He was re-referred on September 20, 2012, and was seen in that clinic on February 11, 2013. (Compl. App. D).  He participated in a sleep study on March 14, 2013, after which a repeat study was recommended.   A second sleep study was conducted on July 18, 2013, after which it was determined that Plaintiff did not meet the criteria for a breathing machine, but that it might be helpful. (doc. 3 at 71-74).   According to Plaintiff, another study was conducted on October 18, 2013, after which he received a breathing machine that has not improved his respiratory disturbance. (MJQ Ans. 8).  Plaintiff asserts that Linithicum denied him necessary medical treatment for the time period from June 7, 2012, through October 18, 2013, because Linithicum denied his grievances regarding the delay in medical care and the failure to provide a breathing machine. (MJQ Ans. 2).

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind. *Id.* at 834 (citations omitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

This state of mind "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis*

*ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005).   In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right.  *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). The acts of a subordinate "trigger no individual § 1983 liability."  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).  Because Plaintiff does not allege that Linithicum directly diagnosed or treated him, he must therefore demonstrate that as the director of the health care division of the TDCJ, she was deliberately indifferent to a violation of his constitutional right.

Plaintiff complains about the type of medical treatment he received and a delay in medical treatment.  Mere disagreement with medical treatment is insufficient to state a claim, however. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).  A failure to provide additional treatment does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino v. Texas Dep't Crim. J*, 239 F.3d at 756.  Even unsuccessful medical treatment does not give rise to a § 1983 violation. *Varnado v. Lynaugh*, 920 F.2d 321, 321 (5th Cir. 1991). Furthermore, a delay in medical care is a constitutional violation only if there has been deliberate indifference which results in substantial harm, which he has not alleged.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  To the contrary, Plaintiff now appears to assert that the breathing machine that he was delayed in receiving is not improving his condition, so any delay in receiving the breathing machine did not result in substantial harm to him. The facts as alleged by Plaintiff indicate that he has received medical care for his sleep apnea--he has been prescribed medication, has participated in several sleep studies, and has been provided a breathing machine.

8

Plaintiff's allegations that he did not receive the correct treatment or the treatment in a manner he considered timely do not state a constitutional violation.  He does not allege that Linithicum, as the director of the medical care division, was deliberately indifferent to any instance where he was refused treatment, where his medical complaints were ignored, or where he was intentionally treated incorrectly.  *See Cooper v. Johnson*, 353 Fed. App'x 965, 967-68 (5th Cir. Dec. 1, 2009) (holding that prison officials were not deliberately indifferent to inmate's medical needs for his ears where he received specialized services, examinations, and treatments for ear infections and hearing impairment).  Plaintiff's medical care claims should be dismissed as frivolous.

**E.  Recreation**

Plaintiff sues Phillip, Winfield, and Wallace, alleging they violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him physical recreation outside of his cell for 310 days, between May 15, 2012 until April 8, 2013, when he was in segregation housing. (Compl. at 8; MJQ Ans. 3, 4), 5.

Plaintiff alleges that when he was first housed at the Dawson state jail in May of 2012, he requested that he not be housed in the dormitory population because he had previously been assaulted by inmates who were angered by his loud snoring.  Winfield permitted Plaintiff to be housed in segregation pending a unit transfer and a recommendation regarding medical care.  When Plaintiff was seen by a doctor in June and was diagnosed with sleep apnea, the doctor recommended that he be housed in "medical isolation" pending a sleep study. (Compl. at 3).  When Plaintiff complained to Phillip and Winfield that he was not allowed recreation while in segregation, Phillip explained that there was no caged recreation area for the segregation population, so recreation was not permitted unless two officers were present with the inmate.  (MJQ Ans. 3, 4).  On July 19, 2012,

Phillip determined that segregation was not medically required and moved Plaintiff to general population. Plaintiff was then disciplined several times and placed on recreation restriction by Phillip and Winfield for refusing to move to general population, and Philip, Winfield, and Wallace denied his grievances alleging a lack of recreation time. (Compl. at 3-4, 8-10; MJQ Ans. 3, 4).

Based on the facts alleged by Plaintiff, Wallace's sole involvement in this issue was advising Plaintiff to file a step two grievance with him and then denying the grievance. (MJQ Ans. 5). Wallace's denial of Plaintiff's grievance did not violate Plaintiff's rights because there is no constitutionally protected interest in a favorable resolution to a grievance. *Geiger v. Jowers*, 404 F.3d at 374. Furthermore, Plaintiff has not demonstrated that limited recreation time, or even a complete absence of recreation time for 310 days, violated his Eighth Amendment rights. To demonstrate an Eighth Amendment claim based on the conditions of his confinement, Plaintiff must show that his confinement resulted in deprivation that was "objectively, sufficiently serious," such that there is a denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834. Plaintiff must then show that the defendants were deliberately indifferent to his health or safety. *Id*. However, prison conditions may be "restrictive and even harsh" without violating an inmate's Eighth Amendment rights, so long as the conditions are not "grossly disproportionate" to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 447 (1981). The Fifth Circuit has held an inmate's Eighth Amendment rights are not violated by being placed on lockdown for 13 months without outdoor exercise, even with evidence of muscle atrophy, loss of range of movement, and depression, because the inmate suffered no serious illness or injury and could not demonstrate deliberate indifference because he was not placed at substantial risk of serious harm. *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008).

Plaintiff asserts that he was in segregation for 23-24 hours a day for 310 days, but makes no allegation that the limited or lack of exercise either caused him to suffer a serious illness or injury, or that he was placed at substantial risk of serious harm to which the defendants were deliberately indifferent. *See Haralson v. Campuzano*, 356 Fed. App'x 692, 697 (5th Cir. Dec. 15, 2009) (the denial of out-of-cell exercise and other recreational activity for seventh months while the inmate was in the infirmary did not violated his Eighth Amendment rights because there was no evidence that he suffered a serious injury or illness). Accordingly, Plaintiff's claims regarding the absence of recreation time should also be dismissed as frivolous.

## F.  Retaliation

Finally, Plaintiff asserts that Phillip and Winfield retaliated against him for filing grievances regarding the lack of recreation time while in segregation. Plaintiff alleges that when he began filing grievances on this issue, Phillip retaliated against him by moving him to general population. (MJQ Ans. 3). He further asserts that Winfield then "manufactured" grievances against him when he refused to return to general population. (MJQ Ans. 4).

To prevail on a claim of retaliation, a plaintiff must establish: 1) a specific constitutional right; 2) a defendant's intent to retaliate against the plaintiff for exercising that right; 3) a retaliatory adverse act; and 4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006), *citing McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998). Causation is a showing that but for the retaliatory motive, the action complained of would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Filing a grievance is a constitutionally protected activity, and a prison official may therefore not retaliate against an inmate for filing one. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To state a retaliation claim, however, a plaintiff must either "produce direct evidence

of retaliation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id*. at 1166.   A plaintiff cannot make mere conclusory allegations of retaliation and must instead assert specific facts. *Whittington v. Lynaugh,* 842 F.2d 818, 820 (5th Cir.1988).   A plaintiff must allege more than his personal belief that he is the victim of retaliation.   *Johnson*, 110 F.3d at 310.

According to Plaintiff's own documents and allegations, he was initially placed in segregation at his own request because of previous problems with other inmates.   According to the response to a grievance regarding his subsequent move to general population, he was moved because the doctor did not order that he be placed in segregation.   He only recommended single-cell housing because his snoring bothered other inmates.   Although no single-cell housing was available at the prison unit, segregation was not medically required. (Compl. App. B).   Plaintiff was then disciplined for his refusal to move to general population. (Compl App. E, F).

Plaintiff has not alleged either direct evidence of retaliation or a chronology of events from which retaliation may be inferred in moving him to general population.   His own chronology of events reflects that he was moved to general population because segregation was not medically required, and because he would receive more recreation time there.   He has not demonstrated that the move to general population from administrative segregation was an adverse act.   *See Brown v. Craven*, 106 Fed. App'x 257 (5th Cir. July 26, 2004) (holding that a transfer to a new job, without any assertion that the new job was less desirable, was not an adverse act).   Nor has he demonstrated that he would not have been moved to general population or disciplined if he had not filed grievances.   According to him, he was disciplined for refusing an order, and he does not dispute that he refused to move to general population.   Inmates may not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." *Woods*, 60 F.3d

12

at 1166.  Plaintiff's retaliation claims should be dismissed as frivolous.

## IV.  RECOMMENDATION

Plaintiff's complaint should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[2]

**SIGNED this 3rd day of March, 2014.**

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[2]  Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.