## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CURLEY JAMES BOYKIN, ID # 1774868,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:13-CV-4643-D-BH** |
| | ) | |
| **CARRIE HUCKLE BRIDGE, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

### SUPPLEMENTAL FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been automatically referred for screening. Based on the relevant filings and applicable law, the complaint should be **DISMISSED** as frivolous.

### I.  BACKGROUND

The plaintiff brought this action under 42 U.S.C. § 1983 against Carrie Huckle Bridge (Bridge) and Lannette Linithicum (Linithicum), a manager and director with the health care division of the Texas Department of Criminal Justice (TDCJ), respectively; Michell Phillip (Phillip) and Rolanda Winfield (Winfield), the senior warden and an assistant warden at the Dawson State Jail, respectively; and Grady Wallace (Wallace), deputy director of private facility contract monitoring with the TDCJ, in their official and individual capacities.  (doc. 3 (Compl.) at 6; Magistrate Judge's Questionnaire (MJQ) Ans. 1-5).  He claimed that: (1) his due process rights were violated when he was charged for a medical care visit and Bridge declined to refund this money to him after he filed a grievance (Compl. at 6, MJQ Ans. 1); (2) Linithicum denied him necessary medical care for sleep apnea (doc. 3 at 6, MJQ Ans. 2); (3) Phillip, Winfield, and Wallace violated his Eighth Amendment rights because he was denied recreation time for 310 days while housed in segregation (Compl. at 6); and (4) Phillip and Winfield retaliated against him for filing grievances over the denial of recreation time by reassigning him to general population and then disciplining him for refusing to move there. (Compl. at 3-4; MJQ Ans 3, 4).  The plaintiff sought monetary damages as well as an

order that he be housed in a particular prison unit in single cell housing status, with continued medical therapeutic study of his respiratory problems.  (MJQ Ans. 9).

On March 3, 2014, it was recommended that the plaintiff's complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b). (*See* doc. 11).  On April 8, 2014, the plaintiff filed a motion to amend his complaint, along with a proposed amended complaint. (doc. 15).  His motion was granted on April 30, 2014.  In his amended complaint, the plaintiff adds one new claim that his due process rights were violated because he received inadequate notice before $100 was removed from his prison inmate account to pay for medical services. (Amend. Compl. at 4).  Otherwise, he expands on his claims of inadequate medical care and loss of recreation, asserting that the medical care he has received for sleep apnea has been inadequate, and that the loss of outside recreation for 310 days constituted deliberate indifference to his health because the lack of sunlight made him sick and miserable. *Id*. at 5-6.  The amended complaint seeks injunctive relief.

## II.  PRELIMINARY SCREENING

The plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III.  SECTION 1983

The plaintiff seeks relief under 42 U.S.C. § 1983.  That section "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, the plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### A.  Medical Care Payment

The amended complaint asserts that Bridge deprived him of his property without due process when he was provided insufficient notice before a $100 co-payment for medical services was deducted from his account.  (Amend. Compl. at 3-4).  In his initial complaint, the plaintiff alleged that the correctional health care manual does not state that inmates will be charged for chronic medical services. (Compl. at 4).  When he filed a grievance requesting reimbursement of the $100, reimbursement was denied because he filed his grievance nine months after the visit, and charges could not be reviewed more than 90 days after the charge. (Compl., App'x C).  When he filed a Step

Two grievance, Bridge denied the grievance because the $100 was a proper charge. *Id.*

Texas state law provides that an inmate who initiates a visit to a health care provider shall pay a $100 fee out of his trust fund account, and that this fee will cover all health care visits for the next year. *See* TEX. GOV'T CODE § 501.063(a) (West 2013). Prior to a 2011 amendment, the fee was $3, and chronic care, emergency care, prenatal care, and routine follow-up care visits were exempted from this fee. As of September of 2011, there are no such exemptions. The statute also states that no inmate may be denied care for failure or inability to pay the fee, however. *Id.*

According to his initial complaint and attached exhibits, the plaintiff had access to the correctional care manual. The basis for his grievances was his belief that the manual did not provide for charges for chronic care services. Access to the inmate's correctional care manual is sufficient notice of the prison's policies regarding charges for medical services. *See Morris v. Livingston*, 739 F.3d 740, 750-51 (5th Cir. 2014) (assuming that inmates have a property interest in funds in trust fund accounts and holding that the plaintiff received sufficient notice of the $100 medical care charge for due process purposes because the charge was posted at the prison and in documents received from the infirmary).

To the extent that the plaintiff is asserting that the prison unit in which he was confined did not follow its own policies with regard to charges for medical care visits, a failure to follow prison policies, procedures, and regulations does not constitute a due process violation, so long as the minimal constitutional due process is followed. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). In *Myers*, a case decided when the inmate medical services fee was $3, the Fifth Circuit held that an unauthorized deprivation of a plaintiff's property, such as a charge to the inmate's account for medical services without notice, does not result in a violation of the inmate's procedural due

4

process rights if there is an adequate post-deprivation remedy available. *Id*. at 94-95. The Fifth Circuit further noted in *Myers* that Texas has a statutory post-deprivation of applying for reimbursement. *Id*. Indeed, the plaintiff's first grievance was denied because he had not sought reimbursement in a timely manner. To the extent that the plaintiff did not receive notice that he would be charged $100 for his visit, there was no due process violation because there was a post-deprivation remedy available to him.

The plaintiff has demonstrated no violation of his due process rights when the $100 was deducted from his account. His new medical care payment claim alleged in his amended complaint should be dismissed as frivolous.

**D. Medical Care**

The plaintiff next asserts in his amended complaint that Linithicum violated his constitutional rights by denying him adequate medical care for his sleep apnea. Specifically, he asserts that while he has been seen by medical professionals on several occasions for his sleep apnea, the care he has received has been ineffective, and the breathing machine he has been provided does not work properly. (Amend. Compl. at 5-6).

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind. *Id.* at 834 (citations omitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

5

To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828.  This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions.  *Id.* at 835.  An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

This state of mind "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted).  An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs."  *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

As in his initial complaint, the plaintiff complains about the type of medical treatment he received and a delay in medical treatment.  Mere disagreement with medical treatment is insufficient to state a claim, however.  *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).  A failure to provide additional treatment does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino v. Texas Dep't Crim. J*, 239 F.3d at 756.  Even unsuccessful medical treatment, such as a breathing machine that does not work effectively to treat the plaintiff's sleep apnea, does not give rise to a § 1983 violation.  *Varnado v. Lynaugh*, 920 F.2d 321, 321 (5th Cir. 1991).  Furthermore, a delay in medical care is a constitutional violation only if there has been deliberate indifference

which results in substantial harm, which he has not alleged.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The facts that the plaintiff alleges indicate that he has received medical care for his sleep apnea--he has been prescribed medication, has participated in several sleep studies, and has been provided a breathing machine.  Although he does not believe that the current treatment for his sleep apnea is working, he has failed to allege that Lithicum has been deliberately indifferent to his health as to constitute a constitutional violation.  *See Cooper v. Johnson*, 353 Fed. App'x 965, 967-68 (5th Cir. Dec. 1, 2009) (holding that prison officials were not deliberately indifferent to inmate's medical needs for his ears where he received specialized services, examinations, and treatments for ear infections and hearing impairment).  The plaintiff's medical care claims should be dismissed as frivolous.

## E.  Recreation

In his initial complaint, the plaintiff sued Phillip, Winfield, and Wallace, alleging they violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him physical recreation outside of his cell for 310 days, between May 15, 2012 until April 8, 2013, when he was in segregation housing. (Compl. at 8; MJQ Ans. 3, 4, 5).  His amended complaint asserts that the deprivation of outside recreation for an extended period of time was also deliberate indifference to his health.

The plaintiff's initial complaint alleged that he was initially housed in segregation at the Dawson state jail when he first arrived in May of 2012, based on a recommendation from his doctor that he be housed in "medical isolation" pending a sleep study. (Compl. at 3).  Phillip later explained to the plaintiff that there was no caged recreation area for the segregation population, so recreation

was not permitted unless two officers were present with the inmate.  (MJQ Ans. 3, 4).  After two months, Phillip determined that segregation was not medically required and moved Plaintiff to general population.  The plaintiff was then disciplined several times and placed on recreation restriction by Phillip and Winfield for refusing to move to general population, and Philip, Winfield, and Wallace denied his grievances alleging a lack of recreation time. (Compl. at 3-4, 8-10; MJQ Ans. 3, 4).  Based on the facts alleged by the plaintiff, Wallace's sole involvement in this issue was advising him to file a step two grievance with him and then denying the grievance. (MJQ Ans. 5).

Wallace's denial of the plaintiff's grievance did not violate his rights because there is no constitutionally protected interest in a favorable resolution to a grievance. *Geiger v. Jowers*, 404 F.3d at 374.  To demonstrate an Eighth Amendment claim based on the conditions of his confinement, the plaintiff must show that his confinement resulted in deprivation that was "objectively, sufficiently serious," such that there is a denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834.  He must then show that the defendants were deliberately indifferent to his health or safety. *Id*.  However, prison conditions may be "restrictive and even harsh" without violating an inmate's Eighth Amendment rights, so long as the conditions are not "grossly disproportionate" to the severity of the crime.  *Rhodes v. Chapman*, 452 U.S. 337, 447 (1981).  The Fifth Circuit has held an inmate's Eighth Amendment rights are not violated by being placed on lockdown for 13 months without outdoor exercise, even with evidence of muscle atrophy, loss of range of movement, and depression, because the inmate suffered no serious illness or injury and could not demonstrate deliberate indifference because he was not placed at substantial risk of serious harm.  *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008).

The plaintiff's amended complaint asserts that as a result of the lack of outside recreation,

he was "sick and miserable."  Following the Fifth Circuit's reasoning in *Hernandez v. Velasquez*, the plaintiff has failed to allege that he was placed in substantial risk of serious harm. *See Haralson v. Campuzano*, 356 Fed. App'x 692, 697 (5th Cir. Dec. 15, 2009) (the denial of out-of-cell exercise and other recreational activity for seven months while the inmate was in the infirmary did not violated his Eighth Amendment rights because there was no evidence that he suffered a serious injury or illness).  Accordingly, the plaintiff's claims regarding the absence of recreation time should also be dismissed as frivolous.

## IV.  RECOMMENDATION

The plaintiff's amended complaint should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[1]

**SIGNED this 27th day of May, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[1]  Section1915(g), which is commonly known as the "three-strikes" provision, provides:
> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

10